UNITED STATES DISTRICT COURT  
SOUTHERN DISTRICT OF NEW YORK

CDG7285

WILLIAM TUCKER,

    Plaintiff,

-against-

THE CITY OF NEW YORK, and Detective VICTOR HARRIS, Detective JAMES McSLOY and P.O.s "JOHN DOE #1-5 (the name "John Doe" being fictitious, as the true names are presently unknown)" all individually and as members of the New York City Police Department.

    Defendants.

**SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

15-CV-3555 (CM)

Plaintiff, WILLIAM TUCKER, by his attorneys, MYERS SINGER & GALIARDO, LLP, complaining of the defendants, respectfully alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §§ 1983, 1988, for the wrongful acts of Defendants THE CITY OF NEW YORK and Detective VICTOR HARRIS, Detective JAMES McSLOY and P.O.s "JOHN DOE #1-5" (the name "John Doe" being fictitious, as the true names are presently unknown), of the New York City Police Department, all acting under color of state law and pursuant to their authority, in violation of Plaintiff's rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, and the constitutional, statutory and common laws of the State of New York.

3. Jurisdiction is invoked herein pursuant to the aforementioned statutory and constitutional provisions and pursuant to 28 U.S.C. §§ 1331, 1343, this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

## VENUE

4. Venue is properly laid in this District under 28 U.S.C. § 1391(b), this being the District in which the claim arose.

## TRIAL BY JURY

5. Plaintiff demands a trial by jury on each and every one of his claims as pled herein.

## PARTIES

6. At all times relevant hereto, Plaintiff, an African-American male, was and is a resident of County, City and State of New York.

7. At all times relevant hereto, Defendant THE CITY OF NEW YORK (hereinafter, "CITY") is a municipality of the State of New York and owns, operates, manages, directs and controls the New York City Police Department (hereinafter, "NYPD"), which employs the other named Defendants.

8. Defendants Detective VICTOR HARRIS ("HARRIS"), Detective JAMES McSLOY ("McSLOY") and P.O.s "JOHN DOE #1-5" (the name "John Doe" being fictitious, as the true names are presently unknown), are and were at all times relevant to this action,

police officers employed by the NYPD, and acting under color of state law. They are being sued in their individual and official capacity.

9. At all times relevant hereto and in all their actions described herein, the Defendants were acting under color of the statutes, ordinances, regulations, policies, customs and usages of the NYPD and CITY, pursuant to their authority as employees, servants and agents of the NYPD within the scope of employment and incidental to their otherwise lawful duties and functions as employees, servants, agents and police officers.

10. The CITY was responsible for the hiring, training, supervision, discipline, retention and promotion of the police officers, sergeants, and/or employees of the NYPD.

## FACTS

11. On June 25, 2008, a man named Gerald Alexander, a "known drug dealer", was shot and killed while sitting in the back seat of a parked car located in the Bronx, New York.

12. Defendants HARRIS and McSLOY and others were assigned to investigate the homicide. During the course of investigation, defendants learned that there was an eyewitness to the murder who had called 911.

13. This eyewitness told the defendants that he had heard a gunshot and turned to see two men leaving the parked car in which the decedent had been shot.

14. The eyewitness gave specific descriptions of the two perpetrators as follows:

   a. **Perpetrator 1** was described as a 25-35 year old black male, "about 6'0" – 6'3", 250-270lbs, dark skin, wearing a black tee shirt, shorts and a floppy black hat", he was seen tucking a gun into his waist band; and

   b. **Perpetrator 2** was described as a 25-35 year old black male "about 6'0"- 6'3", over 250lbs, lighter in complexion, with dark hair down to his shoulders, wearing an unknown color tee shirt and shorts, carrying a plastic bag in one of his hands".

15. That a surveillance video of recovered from the area of the crime showed two men fitting the description provided by the eye witness walking down the sidewalk away from the crime scene.

16. Neither description provided by the witness nor the surveillance video matched plaintiff WILLIAM TUCKER, who was 47 years old at the time of the incident, bald-headed, 5'9" and approximately 185lbs.

17. During the crime scene investigation, the defendants collected multiple DNA samples from the crime scene, including ones taken from the rear door handles, interior seats, etc. of the car where the homicide took place, which they vouchered for DNA testing to aid in the determination of who was in the car at the time of the murder.

18. At that same time, the defendants also lifted a finger print from a cardboard box in the front seat of the car which matched the plaintiff.

19. Upon information and belief, based solely upon this fingerprint the defendants issued a "wanted card" for plaintiff, although the card unequivocally indicated there was "No Probable Cause to Arrest" plaintiff.

20. Nevertheless, during the early morning of August 18, 2008, the defendants entered plaintiff's home in Harlem with fabricated purpose and arrested him under a false warrant.

21. At the time of the arrest, plaintiff was sleeping at home with his wife and children.

22. The defendants searched the plaintiff and the apartment but did not discover any contraband, weapons, firearms or any evidence connecting him to the crime.

23. The arrest of plaintiff was made without probable cause and under false pretense.

24. Later while in police custody, plaintiff agreed to speak with the arresting officers and was questioned about the homicide. Plaintiff admitted knowing the decedent as an acquaintance and having previously sold him marijuana, but denied any knowledge of, or involvement in, the homicide.

25. Plaintiff, who had been at work on the date of the incident, had an alibi for his presence at the time of the homicide.

26. Notwithstanding the complete lack of evidence, defendants instigated legal action and charged plaintiff WILLIAM TUCKER with "acting in concert" to commit, *inter alia*, Murder in the Second Degree.

27. Upon information and belief, at no time did the defendant police officers put plaintiff in a "photo array" to be shown to the eyewitness to the murder.

28. Upon information and belief, at no time did the defendant police officers put plaintiff in a "line-up" to be viewed by the eyewitness to the murder.

29. The murder weapon was never found and no witnesses or other evidence connected plaintiff to the crime.

30. Plaintiff was the only person arrested for the crime.

31. That the defendants knew they lacked a basis to arrest the plaintiff but did so unlawfully with the collateral and misguided objective of pressuring the plaintiff to provide information about the crime and/or to get the real culprits to come forward.

32. Thereafter, in connection with the arrest, the defendants provided false and misleading police reports and sworn statements to District Attorney's Office in an effort to inculpate the plaintiff in the commission of the homicide.

33. Thereafter, in connection with the arrest, the defendants failed to provide or disclose critical facts about the investigation, its evidence, and lack of evidence, to the District Attorney's Office in an effort to inculpate the plaintiff in the commission of the homicide.

34. The forwarding of false information inculpating the plaintiff to the District Attorney, as well as failing to disclose critical evidence tending to exculpate the plaintiff, misled the District Attorney and supported a prosecution in the absence of probable cause.

35. That the defendants' failure to inform the District Attorney fully and accurately about the evidence in the case prevented the District Attorney from making an informed decision about the reliability of the evidence implicating the plaintiff in the commission of the crime.

36. At his arraignment before the Criminal Court in Bronx County, plaintiff was detained without bail.

37. Thereafter, and during the entirety of the prosecution, the defendants repeatedly gave false and misleading testimony regarding the facts and circumstances supporting the arrest of plaintiff.

38. During a grand jury proceeding, the defendants continued their unlawful conduct by additionally providing perjurious testimony and false and misleading information to the grand jury in an effort to inculpate plaintiff in the commission of the homicide.

39. That the failure of the defendants to make a complete and full statement of the facts of the investigation to the District Attorney, including misrepresenting and/or falsifying evidence, independent of their testimony in the grand jury, overcomes any presumption established by the grand jury indictment.

40. On September 3, 2008, plaintiff was indicted for Murder in the Second Degree.

41. During said grand jury proceeding, the defendants failed to disclose that the eyewitness description of the perpetrator did not match the plaintiff.

42. During said grand jury proceeding, the defendants failed to disclose that the DNA evidence recovered in the course of the investigation did not inculpate plaintiff.

43. During said grand jury proceeding, the defendants failed to disclose other relevant and exculpatory facts from the grand jurors.

44. As a result of the false, misleading and unlawful conduct of the defendants, as well as their failure to disclose critical information surrounding the circumstances of the arrest, plaintiff was indicted and remained remanded to jail.

45. On September 17, 2008, only two weeks after the indictment, The Chief Medical Examiner issued the results of the DNA testing related to the crime, finding that multiple DNA alleles from the plaintiff did not match any samples taken from the crime scene.

46. That these findings were communicated to the defendant HARRIS, at the very latest, by December 10, 2008.

47. Upon information and belief, the defendants never shared the results of the DNA testing with the Bronx District Attorney's office.

48. During this entire time, and throughout the course of the nearly four (4) year prosecution of the plaintiff, the DNA evidence which had been collected during the initial investigation and which did not connect plaintiff to the crime, was not properly maintained, reported and/or disclosed to the plaintiff or his legal representatives.

49. That plaintiff and his legal representatives repeatedly requested the results of the DNA testing, but that defendants at all times failed to disclose the information.

7

50. Further, that defendant's evidence management system failed wholly to adequately preserve, test and disclose this valuable scientific evidence that could have exculpated plaintiff in the commission of the crime.

51. During the ensuring prolonged detention of plaintiff WILLIAM TUCKER, the defendants failed to reveal the results of the DNA testing which had been performed in connection with the case and, instead, maintained that there were no results to provide to plaintiff and his attorney.

52. On May 7, 2012, the District Attorney's Office of Bronx County moved to dismiss the indictment against plaintiff WILLIAM TUCKER, and filed a "Dismissal On Recommendation" (DOR) indicating, *inter alia*, that the only eyewitness to the crime "could not identify anyone".

53. That the DOR did not indicate the detailed descriptions that had been given to the police by the eyewitness; nor did it indicate the results of the DNA testing.

54. That plaintiff was released from custody and all charges against him were dismissed and sealed.

### FIRST CLAIM FOR RELIEF: 
### DEPRIVATION OF FEDERAL CIVIL RIGHTS

55. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 54 with the same force and effect as if fully set forth herein.

56. All of the aforementioned acts of Defendants, their agents, servants and employees were carried out under color of state law.

57. All of the aforementioned acts deprived Plaintiff WILLIAM TUCKER of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth, Fifth,

Eighth and Fourteenth Amendments to the Constitution of the United States and in violation of 42 U.S.C. § 1983.

58. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, with all the actual and/or apparent authority attendant thereto.

59. The acts complained of were carried out by the aforementioned individual Defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and rules of the CITY and the NYPD, all under the supervision of ranking officers of said department.

60. Defendants, collectively and individually, while acting under color of state law, engaged in conduct, which constituted a custom, usage, practice, procedure or rule of his/her respective municipality/authority, which is forbidden by the Constitution of the United States.

61. By these actions, these Defendants have deprived Plaintiff of rights secured by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983, for which the Defendants are individually liable.

### SECOND CLAIM FOR RELIEF: CONSPIRACY TO VIOLATE CIVIL RIGHTS

62. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 61 with the same force and effect as if fully set forth herein.

63. All of the aforementioned Defendants conspired to violate Plaintiff's civil rights by agreeing among themselves to falsely charge Plaintiff with crimes and testify falsely, as

described above, in violation of 42 U.S.C. § 1985, for which the Defendants are individually liable.

### THIRD CLAIM FOR RELIEF:
### MALICIOUS PROSECUTION UDER 42 U.S.C. § 1983

64. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 63 with the same force and effect as if fully set forth herein.

65. Defendants were directly and actively involved in the initiation of criminal proceedings against plaintiff.

66. Defendants lacked probable cause to initiate criminal proceedings against plaintiff.

67. Defendants acted with malice in initiating criminal proceedings against plaintiff.

68. Defendants provided false and/or misleading testimony to the prosecuting attorneys and later presented the same false information to the grand jury investigating the charges.

69. Defendants were directly and actively involved in the continuation of criminal proceedings against plaintiff.

70. Defendants lacked probable cause to continue criminal proceedings against plaintiff.

71. Defendants acted with malice in continuing criminal proceedings against plaintiff.

72. The criminal proceedings were terminated in plaintiff's favor on or about May 7, 2012, when all the false charges against him were dismissed and sealed.

### FOURTH CLAIM FOR RELIEF:
### VIOLATION OF PLAINTIFF's RIGHT TO DUE PROCESS

73. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 72 with the same force and effect as if fully set forth herein.

74. That defendants HARRIS and McSLOY and others obtained DNA evidence in the course of their investigation that was not properly or timely tested, maintained or disclosed.

75. That the defendants maintained a poor or nonexistent evidence management system, which failed to properly collect, maintain, test and disclose evidence vouchered for DNA testing and that such failure denied the due process rights of the plaintiff.

76. That the defendants' failure to properly collect, maintain, test and disclose evidence vouchered for DNA testing deprived plaintiff of evidence which would exonerate him of the false charges against him and resulted in a prolonged and unlawful incarceration.

77. Further, that the prolonged detention of plaintiff was unlawful and not based upon probable cause, but rather upon false, misleading and insufficient evidence, in violation of plaintiff's Fourth and Fourteenth Amendment right to be free from continued detention after it was or should have been known that plaintiff was entitled to release.

## FIFTH CLAIM FOR RELIEF
## DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL
## UNDER 42 U.S.C. § 1983

78. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "77" as if the same were more fully set forth at length herein.

79. Defendants created false evidence against plaintiff and, further, failed to provide a full and complete account of the evidence, or lack of evidence, in their investigation.

80. Defendants forwarded false and/or misleading information to prosecutors in the Bronx District Attorney's Office.

81. The forwarding of false information inculpating the plaintiff to the District Attorney, as well as failing to disclose critical evidence tending to exculpate the plaintiff to the District Attorney, misled the District Attorney and supported a prosecution in the absence of probable cause.

82. In creating false evidence against plaintiff and forwarding false and misleading evidence and information to prosecutors, defendants violated plaintiff's constitutional right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution.

83. As a result of the foregoing, plaintiff sustained, *inter alia*, loss of liberty, lost earnings, emotional distress, embarrassment and humiliation and deprivation of his constitutional rights.

## SIXTH CLAIM FOR RELIEF:
## MALICIOUS ABUSE OF PROCESS UNDER 42 U.S.C. 1983

84. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 83 with the same force and effect as if fully set forth herein.

85. Defendants issued legal process to place Plaintiff under arrest.

86. Defendants arrested Plaintiff in order to obtain a collateral objective outside the legitimate ends of the legal process.

87. Defendants acted with intent to do harm to Plaintiff without excuse or justification.

## SEVENTH CLAIM FOR RELIEF:
## MUNICIPAL LIABILITY

88. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in paragraphs 1 through 87 with the same force and effect as if fully set forth herein.

89. That defendants HARRIS and McSLOY and others were assigned to investigate the homicide of Gerald Alexander; it was a serious crime and required a commensurate serious and detailed investigation.

90. Instead, the Defendant police officers conducted an inept investigation wherein they wholesale ignored the description of the perpetrators given by an eyewitness to the crime, failed to submit plaintiff to proper identification procedures and, further, failed to properly maintain, test and/or disclose DNA evidence obtained from crime scene which could have exonerated the plaintiff from the crimes charged.

91. The CITY knew about the unlawful and improper conduct of the individual defendant police officers.

92. The defendants consciously disregarded the patent risk of harm to plaintiff by initiating and pursing a prosecution without properly testing, assessing and/or disclosing the DNA evidence that was immediately available to them.

93. By so doing, the defendants exhibited a deliberate indifference to the health, safety and welfare of the Plaintiff WILLIAM TUCKER.

94. The acts complained of herein were carried out by the aforementioned individual defendants in their capacities as police officers and officials, with the entire actual and/or apparent authority attendant thereto.

95. The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of said department.

96. The CITY knew with a moral certainty that their police officers, particularly those assigned within a homicide unit, will often obtain DNA evidence as part of their investigation. The CITY knew with a moral certainty the results of DNA testing may lead to definitive evidence of an individual's participation or non-participation in a crime and that the failure to test available DNA and disclose the results could lead to a gross miscarriage of justice and the potential conviction of any innocent person.

97. Nevertheless, the CITY was deliberately indifferent to the rights of the accused and failed to properly train and/or supervise the officers who were placed in a position of authority and trust to properly investigate serious crimes and to only bring charges against those accused when supported by competent evidence.

98. The CITY was deliberately indifferent to the rights of the accused in that it failed to establish protocols to safeguard forensic evidence, such as DNA, and insure that such evidence be turned over to Prosecuting officials.

99. It was clear and foreseeable to the CITY that this failure to properly train officers would frequently cause the deprivation of a citizen's rights, particularly persons charged with crimes whose innocence may be established by DNA testing; and thus, the failure to properly train demonstrates a deliberate indifference to the needs of such citizens.

100. Further, that the CITY engaged in a pattern, custom or practice of mishandling evidence by operating a poor or nonexistent evidence management system, which failed to properly collect, maintain, test and disclose evidence vouchered for DNA testing and that such failure denied the constitutional rights of the accused, such as the plaintiff.

101.    Specifically, the customs, policies, usages, practices, procedures and rules of the CITY and the NYPD included, but were no limited to, the following unconstitutional practices:

      a. Failing to properly train as to the protocols in conducting criminal investigations, particularly in the collection, preservation and testing of DNA evidence;

      b. Failing to properly train officers as to how to properly and timely disclose the results of DNA evidence during the course of a criminal investigation;

      c. Failing to establish a proper evidence management system wherein evidence vouchered for DNA testing will be properly collected, maintained and tested in a timely manner;

      d. Failing to establish a proper evidence management system wherein the results of evidence vouchered for DNA testing will be properly disclosed to the prosecuting attorneys and/or counsel for the accused;

      e. Failing to properly discipline police officers who fail to properly collect, preserve and voucher evidence for DNA testing;

      f. Failing to properly discipline police officers who fail to properly and timely disclose the results of DNA testing;

      g. Failing to develop and implement adequate safeguards to the evidence management system, despite a long-standing, pervasive and documented history of its failure to properly and timely test DNA evidence;

      h. Failing to develop and implement adequate safeguards to the evidence management system, despite a long-standing, pervasive and documented history of its failure to properly and timely disclose the results of DNA testing.

102.    The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the NYPD constituted a deliberate indifference to the safety, well-being and constitutional rights of plaintiff.

103. The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the NYPD were the direct and proximate cause of the constitutional violations suffered by plaintiff as alleged herein.

104. The foregoing customs, policies, usages, practices, procedures and rules of the CITY and the NYPD were the moving force behind the constitutional violation suffered by plaintiff as alleged herein.

105. Defendants, collectively and individually, while acting under color of state law, were directly and actively involved in violating the constitutional rights of plaintiff.

106. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers, and were directly responsible for the violation of plaintiff's constitutional rights.

107. The CITY, as municipal policymaker in the training and supervision of Defendant police officers, have pursued a policy and custom of deliberate indifference to the rights of persons in their domain who suffer violation of their rights due to the behavior and conduct of individual police officers acting under the color of state law, with apparent authority, while effecting no legitimate law enforcement purpose, and, further, engaging in conduct which no reasonable police officer could believe did not violate the civil rights of the plaintiff or other such individuals.

108. All of the foregoing acts by Defendants deprived Plaintiff WILLIAM TUCKER of federally protected rights, including, but not limited to, the right:

    a. Not to be deprived of liberty without due process of law;

    b. To be free from seizure and arrest not based upon probable cause;

    c. To be free from unlawful imprisonment;

    d. To be free from unwarranted and malicious criminal prosecution;

    e. Not to have cruel and unusual punishment imposed upon him; and

    f. To have a Fair Trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment and prays for the following relief, jointly and severally, against the defendants:

1. Special and compensatory damages in the amount of TEN MILLION ($10,000,000.00) DOLLARS.

2. Punitive damages in the amount of TEN MILLION ($10,000,000.00) DOLLARS.

3. Reasonable attorney's fees and costs; and

4. Such other and further relief as this Court seems just and proper.

DATED:    New York, New York
              April 27, 2016

Respectfully submitted,

_____
Christopher D. Galiardo (CG7285)

Myers, Singer & Galiardo LLP
*Attorneys for Plaintiff*
299 Broadway, Suite 200
New York, New York 10007
(212) 986-5900
cdg@MSGjustice.com